UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61322-CIV-COHN
Bankr. Case No. 10-28935-RBR

In Re: GLOBAL ENERGIES, LLC,
f/k/a 714 Technologies, LLC

    Debtor.
_____/

JOSEPH G. WORTLEY,

    Plaintiff,

vs.

CHRISPUS VENTURE CAPITAL, LLC,

    Defendant,
_____/

## ORDER DENYING MOTION TO WITHDRAW THE REFERENCE

**THIS CAUSE** is before the Court upon Joseph Wortley's Motion to Withdraw the Reference [DE 1] ("Motion"), transmitted to this Court on June 10, 2011. The Court has carefully considered the Motion, Defendant Chrispus Venture Capital's Response [DE 2-32], and Wortley's Reply [DE 2-3], the exhibits that are part of the record, and has heard the argument of counsel at a hearing held earlier today.

### I. BACKGROUND

Plaintiff Joseph Wortley ("Wortley") seeks to withdraw this action to district court based upon "multiple events that have violated Wortley's right to due process and created the likelihood of impartial rulings." Motion at 1. This action began with an involuntary bankruptcy petition filed on July 1, 2010 by creditors of Global Energies, Inc. Wortley was a co-founder and minority shareholder of approximately

32% of Global. He alleges that after disputes arose with his co-founder, James Juranitch (who owned 63% of Global), an investor in the company, Richard Tarrant (who owned 5% through his investment vehicle Chrispus Venture Capital, LLC ("Chrispus")), conspired with Juranitch to create a default by Global and begin the bankruptcy process through his investment vehicle Chrispus Venture Capital, LLC ("Chrispus"). Wortley contends that Juranitch, Tarrant, and Chrispus have effectively stolen Wortley's interest in Global on the eve of Global signing a contract worth $100 million.

After the initial bankruptcy filing, on August 4, 2010, the bankruptcy court appointed a trustee upon a motion by Chrispus filed with Wortley's consent. Chrispus entered negotiations with the trustee to purchase Global's assets, leading to the trustee's motion on October 6, 2010 for approval of the sale. On October 7, 2010, Wortley moved to dismiss the bankruptcy filing for bad faith. On October 21, 2010, the bankruptcy court approved the trustee's bidding procedures motion, setting November 10, 2010 as the deadline for competing bids. No competing bids were submitted.

In the meantime, a hearing on Wortley's Motion to Dismiss was held on November 10. Wortley alleges that though the parties engaged in discovery for a month before the hearing and Wortley prepared for an evidentiary hearing, after business hours on November 9, the eve of the hearing, Chrispus delivered a box with over 1,000 documents to Wortley's counsel. At the November 10 hearing, Bankruptcy Judge Raymond Ray did not allow testimonial evidence, but accepted the parties' registry of exhibits and allowed counsel to proffer the testimony. On

November 12, Wortley filed his Objection to the Trustee's Motion to Approve Sale. "Concerned about the manner in which the November 10 hearing had been conducted, Wortley and his lawyers elected to withdraw Wortley's Motion to Dismiss." Motion at 4. Chrispus states that the withdrawal took place on November 18, though the Objection to the Sale was not withdrawn. On November 30, 2010, Judge Ray approved the sale and denied the motion to dismiss without prejudice.

On December 17, 2010, Wortley filed a proof of claim in the amount of $513,778.10. On March 11 and March 18, 2011, Chrispus and the Trustee respectively filed their Objections to Wortley's Claim. On March 21, 2011, Wortley, now with new counsel, filed a "Motion to Dismiss Chapter 11 Case for Bad Faith Based on New and Additional Evidence of Conspiracy and Misrepresentation." The bankruptcy court set a hearing for May 4, 2011 on Wortley's Motion and on the Objections to the claim. On April 21, 2011, Chrispus responded to the Motion to Dismiss by filing a motion for summary judgment based upon collateral estoppel and/or motion to quash the motion to dismiss and to deem the May 4 hearing a pretrial conference.

Various events in April caused Wortley to question whether he was receiving due process from the bankruptcy court. On April 25, Wortley filed a limited objection to Chrispus' motion to deem the May 4 hearing as a pretrial conference. On April 27, Judge Ray issued several orders, including continuing the evidentiary portion of the May 4 hearing, granting Chrispus' request regarding the pretrial conference, and setting the hearing on Chrispus' motion for summary judgment for the same time as Wortley's Motion to Dismiss. Meanwhile, an unrelated bankruptcy case involving

Wortley (Trafford), which had been assigned to Bankruptcy Judge John Olson was transferred to Judge Ray on October 29, 2010 after Judge Olson eventually recused himself (Judge Olson had originally denied motions to recuse himself).  Plaintiff states that Judge Ray will be required to review prior Orders of Judge Olson in that case.  Plaintiff further states that Judge Ray's son now practices in the Southern District Bankruptcy Court before Judge Olson.  On April 7, 2011, Wortley asked Judge Ray to recuse himself from Trafford because "the intertwining of relationships which have occurred as a result of Judge Ray and Judge Olson having family members practicing in one another's courts in a small bankruptcy community, prevent Judge Ray from being able to preside over the Trafford case . . . [and the] same conclusion applies in this Case."  Motion at 7.

On April 29, 2011, Wortley filed the present Motion for Withdrawal and a Motion to Stay the bankruptcy action.  On May 3, 2011, Wortley moved to recuse Judge Ray.  Chrispus moved for sanctions for attorney misconduct for filing the second Motion to Dismiss.  On May 12, the bankruptcy court denied Chrispus' Motion for Summary Judgment without prejudice.  On May 13, the bankruptcy court set an evidentiary hearing on Wortley's claim for June 20, while on May 17, the court set an evidentiary hearing on Wortley's Motion to Dismiss for June 23.  After initialing moving these hearings up to June 9 because of counsel conflicts, Judge Ray granted Wortley's Motion to Continue these hearings, and reset these hearings until September 20 (motion to dismiss) and September 21 (merits of claim/objection).  Judge Ray denied Wortley's Motion to recuse on May 31, 2011.

4

## II. DISCUSSION

Although the Bankruptcy Act vests original jurisdiction in the district courts over all cases arising under Title 11 of the Bankruptcy Code, federal courts typically refer bankruptcy cases automatically to the bankruptcy judges. However, reference is to be withdrawn only in certain circumstances. The standard for withdrawal of the reference from a bankruptcy court, 28 U.S.C. § 157(d), states: "The district court may withdraw, in whole or in part, any case or proceeding referred, on its own motion or on timely motion of any party, for cause shown."

### A.  Timeliness of Motion to Withdraw

Defendant argues that Plaintiff has waived the right to seek withdrawal based upon the ten months delay in filing the present motion. "The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether plaintiff's motion . . . was made in a timely manner." In re Karsten Mahlmann, 149 B.R. 866, 869 (N.D. Ill. 1993). "If the motion is not made in a timely manner, the parties' rights under § 157(d) are deemed waived." Id.; In re Stavriotis, 111 B.R. 154, 157 (N.D. Ill. 1990). "For gauging timeliness, the key issue is when the moving party was first aware non-bankruptcy federal laws must be dealt with in resolving the case." Id. at 866; In re Sevko, Inc., 143 B.R. 114 (N.D. Ill. 1992) (five months timely given special circumstances); In re Stavriotis, 111 B.R. at 157 (five months not timely); In re IQ Telecommunication, Inc., 70 B.R. 742 (N.D. Ill. 1987) (one year not timely); Laine v. Gross, 128 B.R. 588 (D. Maine 1991) (six months untimely); In re Securities Group 1980, 89 B.R. 192 (M.D. Fla. 1988) (failure to file motion with answer untimely).

Therefore, "[i]f a motion for withdrawal of reference is not timely made, it will certainly be held that the provisions of the second sentence of section 157(d) have been waived." In re Securities Group 1980, 89 B.R. at 194.

Plaintiff contends at the outset of his motion that the basis for withdrawal is the recent knowledge of alleged conflicts between Wortley and Judge Ray and recent adverse procedural rulings that give rise to Wortley's subjective belief that his due process rights have been and will be compromised.  To the extent Plaintiff also alleges that withdrawal is mandatory because the issues to be litigated in this matter are non-core state law matters which should not be decided by the Bankruptcy Court, that argument is clearly untimely as Plaintiff knew upon entry into this case in early October that he was arguing that the bankruptcy proceeding should be dismissed because it was a non-core matter.  That six and one half months delay by Plaintiff in moving to withdraw the reference waived the right to seek withdrawal on the grounds that this matter is a non-core proceeding.  However, solely for purposes of deciding the untimeliness issue, the Court will find that the alleged reason for withdrawal, procedural unfairness, did not arise until sometime in April of 2011, making the present motion timely as to that reason.

## B.  Withdrawal Factors

As noted above, a district court may, for cause, withdraw the reference of a case on the motion of any party.  28 U.S.C. § 157(d).  The Eleventh Circuit does not read "for cause" as an empty requirement.  Rather, "when making a determination of whether sufficient causes exists, a district court should consider the advancement of uniformity in bankruptcy administration, decreasing forum shopping and confusion,

prompting the economical use of the parties' resources, and facilitating the bankruptcy process." Control Center, L.L.C. v. Lauer, 288 B.R. 269, 274 (M.D. Fla. 2002) (citing In re Simmons, 200 F.3d 738, 742 (11th Cir. 2000)).  Other district courts within the Eleventh Circuit also evaluate whether the claim is core or non-core, whether there has been a jury demand and the prevention of delay.  BankUnited Financial Corp. v. F.D.I.C., 436 B.R. 216, 220 (S.D. Fla. 2010).

In analyzing these factors, Plaintiff contends that the dispute is a non-core matter that belongs in state court.  As noted in the timeliness section above, Plaintiff has waived that argument.  Plaintiff next contends that withdrawal will aid uniformity, though his argument in this section relates to the recusal issue and the underlying relationships between Judge Ray and Judge Olson, and the fact that each has a member of their family practicing before the other.  Motion at 11.  Plaintiff argues that he has obtained a "stigma" by being associated with the Trafford matter.  This Court agrees with Judge Ray that there is no reason for him to recuse in this manner, as "an objective, fully informed lay observer would not entertain significant doubt about the judge's impartiality" because his son appears before another judge in the same court from whom Judge Ray received a case after recusal of that other judge.  28 U.S.C. § 455;  Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).

Plaintiff next asserts that failure to withdraw this action will only encourage forum shopping because debtors will seek a different venue to file to avoid the Fort Lauderdale Division of the Southern District of Florida.  The Court disagrees. Granting withdrawal on this basis will increase recusal motions and increase forum shopping.  Plaintiff's suggestion that this case should be heard in Fort Lauderdale

7

District Court because if Judge Ray and Judge Olson are recused the case will be reassigned to a bankruptcy judge in another division is not a problem – the case should be initially heard in bankruptcy court, not district court, even if the matter had to be transferred to the West Palm Beach division of the bankruptcy court.

Plaintiff next contends that withdrawal will promote economical use of resources and expedite resolution because of a reduced likelihood of a need for appellate proceedings.  This argument could apply to every request for withdrawal and does not find support on this record.  Rather, the bankruptcy process will be facilitated if the matter is allowed to proceed in bankruptcy court.

Finally, as to the "merits" of Plaintiff's claim that he has failed to received due process, the Court concludes that on the record before it, which includes Judge Ray's recent continuance of Plaintiff's requested evidentiary hearing on his motion to dismiss until September 20, Plaintiff has not shown that his due process rights have been or will be violated to merit withdrawal of this action.[1]  Rather, at this point it appears that Plaintiff simply has disagreed with certain procedural rulings of Judge Ray.  If ultimately Plaintiff is dissatisfied with the final outcome, he will have the opportunity to appeal the final ruling.

### III.  CONCLUSION

The Court concludes that withdrawal is not appropriate.  This ruling does not reflect an opinion on the merits of the underlying dispute.

---

[1] The Court does not mean to conclude that such a basis for withdrawal even exists under the statute or under case law.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Joseph Wortley's Motion to Withdraw the Reference [DE 1] is hereby

    **DENIED**;

2. The Clerk shall close this case as no further relief can be granted.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 1st day of July, 2011.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record on CM/ECF